IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JAMES REED HARRIS,**

        Petitioner,

v.                                                                        **CIVIL ACTION NO. 2:07cv57**
                                                                          **(Judge Maxwell)**

**JOE D. DRIVER,**

        Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On July 24, 2007, the *pro se* petitioner[1], James Harris, an inmate at FCI Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking, among other things, restoration of forty (40) days of good time that he lost through a disciplinary hearing. Contemporaneously to his filing, the petitioner paid the required $5.00 filing fee. By Order entered on September 11, 2007, the Court directed the respondent to show cause why the petition should not be granted. On October 10, 2007, the respondent filed a response and on November 6, 2007, the petitioner filed a reply. This matter is pending before me for an initial review and Report

---

[1] The undersigned notes that although the plaintiff purports to be appearing *pro se*, the petition and subsequent filings by the petitioner, including his reply and notices of change of address have ben mailed by Dr. Thomas Ziegler, who resides in Stuttgart, Germany. In addition, Dr. Ziegler signed the proof of service for each filing submitted by the petitioner and also indicates that the petitioner executed a general and durable Power of Attorney in his favor on March 23, 2004. Finally, the undersigned notes that the petition, and even more so the reply, evidence a degree of sophistication that a person without legal training would not ordinarily possess.

and Recommendation pursuant to LR PL P 83.09.

## II. **FACTS**

On December 20, 2005, an incident report was prepared by Officer J. Nunez, an Intelligence officer at USP Victorsville, California,[2] charging the petitioner with a violation of Prohibited Act Code 110,[3] refusing to provide a urine sample or failure to take part in other drug abuse testing. (Doc. 6-2, p. 4). The report indicates that on December 20, 2005, the petitioner was asked to provide a urine sample by Officer Nunez. When the officer handed the petitioner a specimen bottle, the petitioner turned his back to the officer. The officer ordered the petitioner to hand him the specimen bottle, which the petitioner refused to do. The petitioner then proceeded to fill the specimen jar with an unidentified liquid from a tube protruding from his pelvic area. The officer gave the petitioner a direct order to hand him the specimen bottle, and the petitioner complied. The Operations Lieutenant was called by Officer Nunez and a visual search was conducted of the petitioner while both officers were present. The search revealed a plastic bag containing an unidentified yellow liquid with a tube protruding from the bag, which was the tube the officer had observed the petitioner attempting with which to provide a urine sample. (Doc. 6-2, p. 4). The bag with the plastic tube was photographed

---

[2] Although the events giving rise to this petition occurred at USP Victorsville, which is located in California, the petitioner was incarcerated at USP Hazelton, which is located in Bruceton Mills, West Virginia. Because a §2241 petition must be filed in the district of incarceration. United States v. Miller, 871 F. 2d 488 (4th Cir. 1989), it was properly filed in this Court. Furthermore, jurisdiction over a §2241 petition is determined at the time of filing of the petition. Hooker v. Sivley, 187 F. 3d 680, 682 (5th Cir. 1999). Thus, this Court continues to have jurisdiction over this matter even though the petitioner was subsequently transferred to USP Big Sandy, which is located in Inez, Kentucky, and is currently housed at the Central Arizona Detention Center, which is located in Florence, Arizona.

[3] 28 C.F.R. § 541.13 contains a list of prohibited acts and disciplinary scale. Table 3 of that section sets forth Prohibited Act 110: "Refusing to provide a urine sample or to take part in other drug-abuse testing. In the severity scale, it falls with the "Greatest Category" of offenses.

by Officer Nunez. (Doc. 6-2, p. 8).

A copy of the incident report was delivered to the petitioner on December 21, 2005 at 8:45 a.m. (Doc. 6-2, p. 4.). At 10:15 p.m., the investigating officer, J. Halstead, advised the petitioner of his right to remain silent. The petitioner indicated that he understood his right to remain silent and chose to exercise that right. (Doc. 6-2, p. 6).

Based on the written narrative of the reporting officer in the incident report, the investigating officer concluded that the matter should be referred to the Unit Disciplinary Committee, and the petitioner should remain in the Special Housing Unit ("SHU") pending further disposition. (Doc. 6-2, p. 6). Given the severity of the charges, the UDC referred to matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that the petitioner be sanctioned with the loss of Good Conduct Time, Disciplinary Segregation, and the loss of commissary privileges if he was found to have committed the prohibited act. (Doc. 6-2, p. 5).

The Disciplinary Hearing Officer ("DHO") hearing was held on January 6, 2006. The DHO found that the petitioner had willfully violated Code 110 of the Inmate Discipline Policy, Refusing to Provide a Urine Sample, Failure to Take part in Other Drug Testing Attempted Alteration of Urine Sample. The DHO sanctioned the petitioner as follows: (1) 40 days Forfeited Statutory Good Time; (2) 60 days Disciplinary Segregation; (3) 60 days Loss of Commissary; (4) 60 days loss of Telephone Privileges; (5) 180 days Loss of Visiting Privileges; and (6) 180 days No Contact Visits/Immediate Family Visits. The DHO report was delivered to the petitioner on February 13, 2006. (Doc. 6-2, pp.14-16).

The petitioner then filed an appeal to the appropriate Regional Office and Central Office, where a final decision denying his appeal was entered on July 14, 2006. (Doc. 1, p. 3). Thereafter, the petitioner filed the instant §2241 petition.

## III. CONTENTIONS OF THE PARTIES

The petitioner raises the following grounds in his Application for Habeas Corpus:

(1) the Federal Bureau of Prisons unlawfully imposed disciplinary sanctions upon him;

(2) he was unlawfully subjected to a pattern of torture and abuse by false allegations raised against him; and

(3) The Federal Bureau of Prisons unlawfully revoked his good time credits, and therefore, unlawfully computed his sentence.

The respondent argues that the petition should be denied because:

(1) the petitioner was provided all of the Due Process Rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) regarding the disciplinary hearing; and

(2) The evidence relied upon by the DHO was sufficient for a finding of guilt.

## IV. ANALYSIS

### A. Due Process

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. V and XIV, §1. A liberty interest is involved in the instant case as Cuevas was denied good time credit. See Young v. Kann, 926 F.2d 1396, 1399 (3rd Cir. 1991 (a federal prisoner "has a constitutionally protected liberty interest in good time credit").

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court addressed the due process that must be provided during a prison disciplinary proceeding. According to the Supreme Court, due process requires as follows:

(1) giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2) providing the prisoner a written statement by the fact finders as to the evidence relied

>
> on and reasons for the disciplinary action;
>
> (3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
>
> (4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
>
> (5) providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that Cuevas was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, the petitioner received a copy of the incident report on December 21, 2005,[4] and the DHO hearing was on January 6, 2005.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated February 1, 2006, notes that the specific evidence relied upon to support the finding that the petitioner committed the prohibited Act of Code 110 were the reporting officer's statement, the copies of two photographs taken by the

---

[4] In his reply to the respondent's response, the petitioner makes much of the fact that Officer Halstead stated that he advised the petitioner of his rights on December 20, 2005 at 10:15 p.m.. The petitioner maintains that the duty roster from December 20, 2005 establishes that Officer Halstead was on duty that day from 2:00 p.m. until 10:00 p.m. While the duty roaster does indicate that Officer Halstead was scheduled to work from 2:00 p.m. to 10:00 p.m., there is nothing in the record to suggest that he did not remain past his scheduled duty assignment to finish the paperwork necessitated by the incident in question. This is particularly likely given that only Lieutenant Ontiveros was scheduled to be on duty after 10:00 p.m. (Dckt. 7-2, p. 42).

reporting officer, the petitioner's own statement to the DHO, wherein he stated "No contest, no comment," the supporting memorandum dated December 20, 2005 from the reporting officer, and the supporting memorandum dated December 20, 2005, written by Lieutenant A. Ontiveres. In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "[a]ny action on the part of an inmate to circumvent the urinalysis testing procedures threatens the security of the institution and the safety of all staff and other inmates. Inmates who may be under the influence of narcotics at any given time have a greater propensity too become violent or display disruptive behavior.
>
> The disallowance of good time is imposed based on the severity of offense. The loss of visitation privilege sanctions are imposed as drugs are more likely to enter through the visiting room, and the loss of other privileges are to deter future misconduct.

(Doc. 6-2, pp. 15-16).

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. The petitioner did not request any witnesses and did not provide any evidence.

Fourth, the petitioner waived his right to a staff representative, and finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[5] The petitioner alleges that the DHO was predisposed to finding him guilty, but provided no independent evidence to support his bald accusation. Based upon the record before the Court, the undersigned finds that the DHO report does not reveal any bias and that there is no justification for finding the DHO was biased.

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act

---

[5] See 28 C.F.R. § 541.16(b).

Code 110. The Supreme Court held in <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching his decision, the DHO considered the eyewitness account of Officer Nunez, who provided a written testimonial in the Incident Report and a Memorandum outlining in more detail the events of December 20, 2005 and his attempt to obtain a urine specimen from the petitioner. In addition, he considered the Memorandum from Lieutenant Ontiveros outlining his observations during the visual search of the petitioner on December 20, 2005, and the discovery of the plastic bag and tube containing an unknown yellow liquid strapped to the petitioner's left thigh. Finally, the DHO considered the petitioner's own statement during the hearing when he stated "No contest, no comment." After considering all of the evidence the DHO found that the petitioner had willfully violated code 110, Refusing to Provide a Urine Sample, Failure to Take part in Other Drug Testing, Attempted Alteration of Urine Sample. As previously noted, it is not the Court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. So long as there is evidence to support the DHO's determination, it must stand. <u>See Superintendent</u> at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which

a rational conclusion could be drawn that the petitioner committed the act as charged.[6]

## V. **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 25, 2008

                                                          /s/ James E. Seibert

---

[6] As previously noted, Prohibited Act Code 110 notes as follows: "[r]efusing to provide a urine sample or to take part in other drug-abuse testing." The petitioner argues that he did not refuse to provide a urine sample, and therefore, cannot be guilty of this prohibited act. Clearly, a reasonable interpretation of this Code provision would classify an attempt to "circumvent drug testing by providing a substance from a device attached to your body" (Doc. 7-2, p. 38) as amounting to a refusal to take part in drug testing.

JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE